**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MELINDA GAY MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV388 |
| | ) | |
| LOWE'S HOME CENTERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the Court for disposition of Defendant Lowe's Home Centers, Inc's ("Lowe's") Motion to Compel (Docket Entry 23). For the reasons that follow, the instant Motion will be granted in part.

## Background

Plaintiff, an employee of Lowe's in Burlington, North Carolina, from January 2005 until May 1, 2007, was diagnosed with metastasized breast cancer in October 2006. (See Docket Entry 1, ¶¶ 13, 14, 25.) Her treatment caused her to miss work from October 2006 until January 29, 2007. (See id. ¶ 15.) Upon her return, Plaintiff sought several workplace accommodations for her disability. (See id. ¶ 17.) With the exception of some initial receptiveness to her requests for consecutive days off to allow for greater recovery, Plaintiff alleges that her supervisor and the human resources department otherwise denied her requests and harassed her about her medical condition. (Id. ¶¶ 17-22.)

Plaintiff claims she could not work in this environment and submitted a resignation letter, with an effective date of May 1, 2007. (Id. ¶ 25.)

Plaintiff thereafter filed a Complaint with this Court alleging claims for (1) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12010-12213 (id. ¶¶ 35-39); (2) constructive discharge in violation of the ADA (id. ¶¶ 49-55); (3) wrongful discharge in violation of the ADA (id. ¶¶ 63-64); and (4) intentional infliction of emotional distress under North Carolina law (id. ¶¶ 36-48).[1] Plaintiff seeks back pay for the period from May 1, 2007, to December 31, 2008, as well as damages for emotional and mental distress and reimbursement of medical expenses related to her treatment for emotional and mental distress. (See Docket Entry 23-1 at 8.)

Defendant served its First Set of Interrogatories and First Request for Production of Documents on Plaintiff on August 19, 2011. (See Docket Entry 23, ¶ 2.) On November 1, 2011, Plaintiff's counsel served Plaintiff's Answers to Defendant's First Set of Interrogatories and Plaintiff's Responses to Defendant's First Requests for Production of Documents. (Id. ¶ 5.) Defendant

_____

[1] Plaintiff's claim for wrongful discharge in violation of the ADA is actually made up of paragraphs appearing consecutively as 63, 61, 62, 63 and 64. (See Docket Entry 1 at 14.) After the first paragraph 63, Plaintiff's Complaint appears to restart its numbering beginning with paragraph 61, resulting in two paragraphs each numbered as 61, 62 and 63. (See id. at 14-15.)

thereafter "wrote a letter to Plaintiff's counsel describing in detail the deficiencies of Plaintiff's discovery responses and demanding that Plaintiff supplement her responses and document production" prior to the mediation between the parties scheduled for December 7, 2011. (Docket Entry 24 at 3.) Defendant contends that, at mediation, the parties discussed Defendant's concerns regarding Plaintiff's production and Defendant "was informed by Plaintiff's counsel that Plaintiff would provide a response to [Defendant's] December 5th letter on the following day." (Id.) Defendant further contends that it heard from Plaintiff on December 8, 2011, when "Plaintiff's counsel e-mailed Defendant's counsel and represented that [Plaintiff] would respond to the December 5th letter by the close of business on December 9, 2011." (Id. at 3-4.) However, prior to Defendant's filing of the instant Motion on December 29, 2011, Plaintiff did not offer any response to Defendant's December 5, 2011 letter. (See id.)

Defendant's instant Motion "moves that Plaintiff be compelled to supplement her responses to Defendant's First Set of Interrogatories and First Request for Production of Documents, and that the Court require Plaintiff to pay to Defendant the reasonable expenses incurred in making this motion, including attorney's fees." (Docket Entry 13 at 1.) After the filing of the instant Motion, and on the same day that Plaintiff filed her Response Brief, Plaintiff responded to Defendant's December 5, 2011

-3-

correspondence regarding Plaintiff's production. (<u>See</u> Docket Entry 25-1.)  In Plaintiff's letter to Defendant, Plaintiff noted her position regarding the sufficiency of certain of her responses and, with respect to other requests, provided "Supplemental Interrogatory Answers and Supplemental Responses to Request for Production of Documents with any and all documentation which [Plaintiff] has in her possession, custody or control that is responsive to those requests" (Docket Entry 25 at 2).  Defendant thereafter filed its Reply Brief, contending that despite Plaintiff's supplemental offerings, Plaintiff "continues to withhold documents which are clearly discoverable and relevant to the underlying dispute."  (<u>See</u> Docket Entry 26 at 1.)

Discussion

A.  *Standard*

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants."  Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment.  Accordingly, under the Federal Rules of Civil Procedure, "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is <u>relevant to any party's claim or defense</u> . . . ."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  <u>Id.</u>; <u>see also</u> <u>Elkins v. Broome</u>, No.

-4-

1:02CV305, 2004 WL 3249257, at *2 (M.D.N.C. Jan. 12, 2004) (unpublished) ("[R]elevancy at discovery is a far different matter from relevancy at trial. At discovery, relevancy is more properly considered synonymous with 'germane' as opposed to competency or admissibility."); <u>Flora v. Hamilton</u>, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("It is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader.").

However, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(1). Specifically, Rule 26(b)(2)(C), sets out the following limitations:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C); <u>see also</u> <u>Nicholas v. Wyndham Int'l, Inc.</u>, 373 F.3d 537, 543 (4th Cir. 2004) ("Even assuming that this information is relevant (in the broadest sense), the simple fact that requested information is discoverable . . . does not mean that discovery must be had. On its own initiative or in response to a

-5-

motion for protective order under Rule 26(c), a district court may limit [such discovery] . . . if it concludes that [a limitation in Rule 26(b)(2)(C) applies]."); Fed. R. Civ. P. 26(c)(1) (stating that "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding . . . discovery [or] . . . inquiry into certain matters, or limiting the scope of . . . discovery to certain matters").

Notwithstanding the foregoing limitations, the United States Court of Appeals for the Fourth Circuit has declared that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (emphasis added). Moreover, the commentary to the Rules indicates that "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26 advisory committee's notes, 2000 Amendment, Subdivision (b)(1).

In conducting an analysis under this framework in the context of a motion to compel, district judges and magistrate judges in the Fourth Circuit (including members of this Court) have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion. See Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243-44

-6-

(M.D.N.C. 2010) (citing _Wagner v. St. Paul Fire & Marine Ins. Co._, 238 F.R.D. 418, 424-25 (N.D.W. Va. 2006)); _United Oil Co., Inc. v. Parts Assocs., Inc._, 227 F.R.D. 404, 411 (D. Md. 2005); _Elkins_, 2004 WL 3249257, at *2 (Dixon, M.J.); _Spell v. McDaniel_, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984); _Flora_, 81 F.R.D. at 578 (Gordon, C.J.); _Rogers v. Tri-State Materials Corp._, 51 F.R.D. 234, 247 (N.D.W. Va. 1970); _Pressley v. Boehlke_, 33 F.R.D. 316, 318 (W.D.N.C. 1963)).

B.  *Application*

The interrogatory requests in dispute consist of the following:

INTERROGATORY NO. 3

State whether you have been employed in any manner (or self-employed) at any time from May 1, 2007, to the present. For each such period of employment or self-employment, state the name and address of each company, business enterprise, organization or public employer where you are or have been employed or self-employed, the nature of its business, the title of each position you have held, the dates you have held each position, the wages and benefits you have received from each position, and the duties of each position.

. . .

INTERROGATORY NO. 4

For the period of time after May 1, 2007, describe in detail, and identify all documents relating to, all efforts made by you to seek or obtain employment, including but not limited to:

a.   the name and address of each company, business enterprise, organization or public employer with whom you sought employment;

b.   the name and address of each public or private
     employment service or agency you contacted to
     assist you in seeking or obtaining employment;

c.   all sources you used in seeking to obtain
     subsequent employment; including, but not limited
     to, personal contacts, newspapers, trade
     publications, etc.;

d.   whether or not you received a job offer and if so
     the date of such offer, the terms and conditions of
     such offer, including the position, title, salary
     level and other benefits and whether or not you
     accepted said offer; and

e.   the reason you did or did not commence employment
     with each employer identified.

. . .

INTERROGATORY NO. 5

     If you have received any income from any sources
from May 1, 2007, to the present (including any
unemployment, disability, or other government benefits),
state the nature and source of any such income, the gross
amounts of any such income, the dates on which it was
received, and identify any documents related to the
foregoing answers.

. . .

INTERROGATORY NO. 6

     State whether you have been incapable of working for
any reasons, including but not limited to health reasons
or any kind of disability, for any period from May 1,
2007, to the present. If so, specify the reason and dates
of incapacity.

. . .

INTERROGATORY NO. 7

     For each item of damages or other relief sought by
you in this action, including any emotional or mental
distress, identify the nature of the damages or relief
sought, the amount of monetary relief claimed, and the

-8-

method of calculating the monetary relief sought, including but not limited to, the specific elements included, the amount claimed for each element, and the period it covers.

. . .

INTERROGATORY NO. 8

     If you contend that you are entitled to damages for alleged emotional or mental distress, state whether at any time since May 1, 2007, you have sought or received any type of medical treatment, psychological or psychiatric care, or counseling of any kind from or by any doctor, nurse, chiropractor, psychiatrist, psychologist, clinic, clinical psychologist, therapist, hospital, emergency room, or any other kind of medical provider; any family counselor, marital counselor, school counselor, or any other kind of counselor; social worker, priest, minister or rabbi. For each such practitioner, state the following:

a.     his or her name and title;

b.     his or her business address and phone number; and [sic]

c.     each and every date on which you were treated by or consulted with such person; [and]

d.     the specific nature of the medical treatment, psychological care, or counseling sought or obtained by you.

INTERROGATORY NO. 8 (sic)

     State whether you made an application to any local, state, or federal agency (including but not limited to the Social Security Administration), or to any insurance company for benefits on account of any disability during the period from January 1, 2007 to the present. If so, state separately for each such application:

a.     The date of application;

b.     The name and address of the agency or insurance company;

-9-

    c.    Whether your application for benefits was accepted or denied;

    d.    The date(s) you received disability benefits and the amount (if applicable).

(Docket Entry 23-1 at 4-11.)

The document requests at issue consist of the following:

REQUEST NO. 1

The "threatening and discriminatory emails" referred to in paragraph 17 of the Complaint, and the "harassing emails" referred to in paragraphs 24 and 25 of the Complaint.

. . .

REQUEST NO. 2

All documents concerning each and every "reasonable accommodation" requested by Plaintiff during time period of January 1, 2007 through April 30, 2007.

. . .

REQUEST NO. 3

All documents associated with each and every application made by you during the period of January 1, 2007 to the present for disability benefits, including but not limited to supporting statements from treating physicians, documents concerning the disposition of your application, documents showing the dates you started receiving benefits, and the amount of benefits you have received.

. . .

REQUEST NO. 4

All of your federal and state income tax returns and W-2 statements for the calendar years 2007 through the present.

. . .

-10-

REQUEST NO. 5

All documents relating to any source of income received by you from May 1, 2007, to the present, including, but not limited to, paycheck stubs, employer-sponsored disability benefits, social security disability benefits, unemployment compensation benefits, financial records of any enterprise of which you are or were an owner or part owner, and financial records from self employment.

. . .

REQUEST NO. 6

All documents relating to your efforts, if any, to find employment from May 1, 2007, until the present, including but not limited to:

a.   All documents sent to or received from any prospective employer by you;

b.   All resumes or other documents reflecting your skills and/or job history and/or references used in an effort to obtain employment; and

c.   All job search records provided by you, or filled out by you, to the State of North Carolina.

. . .

REQUEST NO. 8

If you contend you are entitled to compensatory damages for emotional or mental distress, all documents since May 1, 2007, relating to your medical (i.e., physical and mental) condition, including but not limited to all records, medical or otherwise, maintained by all individuals, groups, or organizations identified in your responses to interrogatories.

(Id. at 17-22.)

In its instant Motion, Defendant argued initially, as a general matter, that Plaintiff improperly limited her production to the time period from May 1, 2007, to December 31, 2008. (See

-11-

Docket Entry 23, ¶ 6.)  In addition, Defendant offered specific arguments regarding why the Court should compel Plaintiff to respond to Defendant's Interrogatory Nos. 5, 7 and 9 and Document Request Nos. 1, 2, 3 and 8.  (<u>Id.</u> ¶¶ 7-10.)  After receiving Plaintiff's supplemental discovery answers and documents, which corresponded with the filing of Plaintiff's Response Brief, Defendant's Reply Brief narrowed the focus of the production sought, contending:

> Plaintiff continues to withhold documents which are clearly discoverable and relevant to the underlying dispute.  This includes, but is not limited to: (1) documents (including medical records) and information for the time period after December 31, 2008; (2) the Psychosocial Assessment of Plaintiff prepared by Duke University Medical Center in 2007; (3) the complete records of Plaintiff's treatment by Dr. Gary Clary; and (4) Plaintiff's applications for disability benefits.

(Docket Entry 26 at 1.)

The Court will address each of the categories of information sought in Defendant's Reply Brief in turn.

i.  *Information from January 1, 2009 to Present*

Defendant contends that "Plaintiff should be required to supplement her responses to Interrogatory Nos. 3, 4, 5, 6, 8 and 9 and Document Request Nos. 3, 4, 5, 6, and 8 to include all responsive information for the time period following December 31, 2008 to the present."  (Docket Entry 23 at 3.)  Plaintiff offered the following objection to explain her decision to limit her discovery responses to the time period before January 1, 2009:

-12-

> Plaintiff is not seeking back pay from January 1, 2009,
> to the present, nor front pay in this action and
> therefore information requested for any date after
> December 31, 2008, is not reasonably calculated to lead
> to the discovery of admissible evidence.

(See Docket Entry 23-1 at 5.)  Plaintiff's objection in this regard cannot stand.

Information regarding Plaintiff's work history and medical treatments after December 31, 2008, is relevant to Plaintiff's claim of emotional distress, regardless of the limitations Plaintiff has placed on her claim for back pay.  The Fourth Circuit has affirmed a district court's determination that medical records were subject to discovery where the plaintiff sought damages for mental/emotional damages.  Coffin v. Bridges, No. 95-1781, 72 F.3d 126 (decision without opinion), 1995 WL 729489, at *1, 3-4 (4th Cir. Dec. 11, 1995) (unpublished).  Moreover, this Court, per Magistrate Judge Wallace W. Dixon, has ordered production of medical records where the plaintiff sought "compensatory damages for 'past and future emotional distress, humiliation, anxiety, inconvenience, and loss of enjoyment of life,'" and concluded that the defendant was "entitled to discover information concerning [the plaintiff's] medical, mental, and pharmaceutical history to determine if any prior event may affect [the] demand for damages." EEOC v. Sheffield Fin. LLC, No. 1:06CV00889, 2007 WL 1726560, at *4 (M.D.N.C. June 13, 2007) (unpublished).  Magistrate Judge Dixon explained that such "'information is further relevant to the

preparation of defendant's defenses . . ., because [the plaintiff's] medical records may reveal stressors unrelated to defendants which may have affected plaintiff's emotional well being.'" Id. (quoting LeFave v. Symbios, Inc., No. CIV.A. 99-Z-1217, 2000 WL 1644154, at *2 (D. Colo. Apr. 14, 2000) (unpublished)). Other courts in the Fourth Circuit have reached the same basic conclusion. See, e.g., Pressley v. Caromount Health, Inc., Civil No. 3:09CV460-FDW-DSC, 2010 WL 4026561, at *1 (W.D.N.C. May 11, 2010) (unpublished) ("As the Court has concluded on two earlier occasions, Plaintiff has placed her emotional and mental state at issue. Accordingly, Defendants are entitled to discovery of Plaintiff's medical information and records." (internal quotation marks and citations omitted).)

The same reasoning applies to the instant facts. Although Plaintiff may have limited her claim for back pay to the time period from May 1, 2007 to December 31, 2008, she has adopted no similar limitation on her claim for emotional damages. (See Docket Entry 1; Docket Entry 23-1 at 8.) Moreover, Plaintiff seeks reimbursement for her prescription medication for the period from January 1, 2007 through December 12, 2011, thereby placing her emotional health, and alternate causes for any emotional distress, directly at issue. (Docket Entry 26 at 3; see also Docket Entry 25 at 9.) An examination of Plaintiff's medical records "may reveal stressors unrelated to defendants which may have affected

-14-

[P]laintiff's emotional well being," <u>Sheffield</u>, 2007 WL 1726560, at *4 (quoting <u>LeFave</u>, 2000 WL 1644154, at *2), and, accordingly, affect a computation of Plaintiff's damages due to emotional distress caused by Defendant.

Similarly, Plaintiff has failed to persuade the Court that Plaintiff's work history since January 1, 2009 is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Though, again, Plaintiff has limited her back pay damages to a discrete period, no reason exists to bar Defendant's examination into Plaintiff's work history as such may reveal, or shed light on, Plaintiff's emotional well-being.

ii. *The Psychosocial Assessment of Plaintiff*

Defendant contends that the medical records provided thus far reveal that a psychosocial assessment of Plaintiff was completed at Duke University Medical Center on September 12, 2007, and that, "[d]espite Defendant's repeated requests for a copy of the assessment, Plaintiff has failed to produce it." (Docket Entry 26 at 5.) Plaintiff's Response Brief notes that "Plaintiff has produced all medical and/or psychological treatment records which she has in [her] possession. Plaintiff has produced everything relevant to this case, including any and all documents referencing any type of psychological assessment or evaluation which had been provided by Duke University Medical Center." (Docket Entry 25 at 4.) Plaintiff's Response Brief does not make it clear whether

-15-

Plaintiff asserts that (1) the actual assessment has been produced; (2) the only documents in existence merely <u>reference</u> the assessment and they have been produced; or (3) Plaintiff lacks an obligation to produce the assessment because it is not in her "possession" (<u>id.</u>).

To the extent said assessment exists, it is relevant to Plaintiff's claims for reasons discussed in the preceding subsection. Although Plaintiff notes that she has produced the "records which she has in [her] possession" (<u>id.</u>), the obligations under Rule 34(a)(1) are broader, requiring the production of documents "in the responding party's possession, custody, or control," Fed. R. Civ. P. 34(a)(1). "A document is in a party's control when the party has 'the right, authority or practical ability to obtain the documents from a non-party to the action.'" <u>Hosch v. United Bank, Inc.</u>, Civil Action No. 4:09-cv-1490-TLW-TER, 2012 WL 486478, at *5 (D.S.C. Feb. 13, 2012) (unpublished) (citing <u>Goodman v. Praxair Servs., Inc.</u>, 632 F. Supp. 2d 494, 515 (D. Md. 2009)) (additional internal quotation marks and citation omitted).

Accordingly, "Plaintiff has not discharged [her] obligation to produce responsive documents by stating that [she] has no such documents in [her] possession." <u>Equal Emp't Opportunity Comm'n v. Luihn Food Sys., Inc.</u>, No. 5:09-CV-387-D, 2011 WL 649749, at *6 (E.D.N.C. Feb. 10, 2011) (unpublished) (internal quotation marks and citation omitted). In the instant case, Plaintiff has not

-16-

argued that she lacks custody or control of the assessment at issue. (See Docket Entry 25.)  Moreover, "[c]ourts have held that a party has control over his medical records because, by either granting or denying consent, he may determine who shall have access to them." Washam v. Evans, No. 2:10CV00150 JLH, 2011 WL 2559850, at *1 (E.D. Ark. June 29, 2011) (unpublished) (citing Bertrand v. Yellow Transp., Inc., No. 3:08-1123, 2010 WL 2196584, at *1 (M.D. Tenn. May 28, 2010) (unpublished), and Klesch & Co. Ltd. v. Liberty Media Corp., 217 F.R.D. 517, 520 (D. Colo. 2003)).

Therefore, the Court will order Plaintiff to supplement her responses to provide the psychosocial assessment of Plaintiff performed by Duke University Medical Center in 2007 if said assessment has not previously been provided.

iii. *The Complete Records of Plaintiff's Treatment by Dr. Gary Clary*

In her Response, Plaintiff notes that, after receiving the December 5, 2011 inquiry from Defendant regarding Plaintiff's production, Plaintiff's counsel "learned that [Plaintiff] did see Dr. Gary Clary very briefly and [Plaintiff's counsel has] been in contact with [Dr. Gary Clary's] office concerning those records." (Docket Entry 25 at 4.)  The Response further notes that, "[a]s soon as those records are produced, [Plaintiff] will promptly provide those records." (Id.)  In Defendant's Reply, Defendant contends that Plaintiff's failure to disclose Dr. Clary's treatment

-17-

until after Defendant's instant Motion shows Plaintiff's noncompliance with her discovery obligations. (See Docket Entry 26 at 4-5). Defendant further argues that, "[a]lthough Plaintiff states that she is awaiting her medical records from Dr. Clary, Defendant is entitled to an order from the Court compelling production of these records given Plaintiff's repeated delay and outright failure to comply with Defendant's discovery requests." (Id. at 5.)

No dispute appears to exist between the parties regarding Plaintiff's obligation to provide the records of Dr. Clary to Defendant. Although Plaintiff's failure to act on this matter before Defendant moved to compel shows the insufficiency of Plaintiff's initial production, Plaintiff apparently since has acted diligently in attempting to retrieve said records. (See Docket Entry 25-1 at 6-9.) Accordingly, the Court sees no reason to order Plaintiff to do anything further at this point.

iv. *Plaintiff's Applications for Disability Benefits*

Defendant next argues that "Plaintiff continues to object to and resist producing her applications for disability benefits, which would include the medical evaluations that support her applications for disability benefits." (Docket Entry 26 at 6.) Plaintiff's Response noted that "[Plaintiff] does not have copies of any of the applications for disability benefits or any other documents related to disability benefits other than those produced

-18-

with the attached supplemental responses. [Plaintiff] did not keep copies of those documents and does not have them in her custody, control or possession. If Defendant seeks additional information or documents concerning social security disability benefits, they are free to obtain those through the Social Security Administration." (Docket Entry 25 at 6.)

The Court notes initially that it does not appear that either party has made any attempt to obtain the documents at issue from the Social Security Administration. Moreover, because the documents at issue rest with an independent third-party over which Plaintiff lacks any authority, it is not clear that said documents fall within Plaintiff's "possession, custody, or control," Fed. R. Civ. P. 34(a)(1). In addition, Defendant has not cited any authority that the responsibility to retrieve government records rests on Plaintiff rather than on the Defendant through the use of the procedures outlined in Fed. R. Civ. P. 45. Accordingly, the Court declines to grant Defendant's instant Motion in this regard.

## Costs and Attorneys' Fees under Rule 37

Defendant requests that "it be awarded costs, including reasonable attorneys' fees, necessitated by bringing this motion." (Docket Entry 14 at 9.) Under Fed. R. Civ. P. 37, "[i]f the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an appropriate opportunity to be heard, require the party . . . whose

-19-

conduct necessitated the motion, . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). The Court's obligation to award expenses in this situation is limited by only three scenarios:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). The Court finds none of these limitations applicable.

First, with respect to subsection (i), the Court notes that Defendant initially sought to address perceived deficiencies via letter sent December 5, 2011, and filed the instant Motion only after Plaintiff did not adequately respond to those requests. Second, Plaintiff's objection (other than as to the Social Security records) was not "substantially justified," Fed. R. Civ. P. 37(a)(5)(A)(ii). Rather, notwithstanding Plaintiff's contentions that information after December 31, 2008, is irrelevant because Plaintiff does not seek back pay after that date, the absence of any similar limitation to Plaintiff's requests for damages due to emotional distress and reimbursement for medical treatment invalidates her objection. Similarly, Plaintiff's employment

history after December 31, 2008, may reveal information that bears upon Plaintiff's emotional distress damages. Finally, the record reflects no other circumstances that would make an award of expenses unjust.[2]

<u>Conclusion</u>

Plaintiff has failed to carry her burden of justifying her resistance to Defendant's requests for information related to Plaintiff's medical and work histories after December 31, 2008, and the psychosocial assessment performed on Plaintiff by Duke University. Further, although the Court declines to order Plaintiff to provide the records of Dr. Clary given Plaintiff's agreement to do so, no justification exists for Plaintiff's failure to produce such discovery until after Defendant moved to compel. With respect to Plaintiff's Social Security records, the Court declines to compel Plaintiff to produce documents absent a further showing that such materials fall within Plaintiff's "possession, custody, or control," Fed. R. Civ. P. 34(a)(1). Finally, the circumstances of this case present no basis to ignore the fee-shifting provisions of Fed. R. Civ. P. 37(a)(5).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (Docket Entry 23) is **GRANTED IN PART** in that:

---

[2] Because the Court will not grant Defendant's instant Motion as it relates to Social Security records, the Court will require an apportioning of the expenses to discount for that aspect of the instant Motion and will permit Plaintiff further opportunity to be heard. <u>See</u> Fed. R. Civ. P. 37(a)(5)(C).

(1) by April 11, 2012, Plaintiff shall supplement her prior responses to Defendant's discovery requests to provide responsive information from after December 31, 2008, as well as the psychosocial assessment performed at Duke University;

(2) Plaintiff shall pay an apportioned amount of Defendant's reasonable expenses incurred in bringing the instant Motion;

(3) on or before April 11, 2012, Defendant shall serve Plaintiff with a statement of the reasonable expenses, including attorney's fees, resulting from Defendant's making of the instant Motion, reduced in a reasonable fashion to account for the fact that the Court did not grant any relief as to the Social Security records;

(4) if Plaintiff contests the reasonableness of any such expenses, on or before April 25, 2012, Plaintiff shall file a memorandum of not more than five pages along with a certification that Plaintiff has attempted to confer in good faith with Defendant about that subject;

(5) on or before May 9, 2012, Defendant may file a response of not more than five pages to Plaintiff's foregoing memorandum; and

(6) on or before May 16, 2012, Plaintiff may file a reply of not more than five pages to any such response by Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

Date:  March 29, 2012