# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MELINDA GAY MORRIS,               )
                                  )
            Plaintiff,            )
                                  )
    v.                            )          1:10CV388
                                  )
LOWE'S HOME CENTERS, INC.,        )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the Court for disposition of Plaintiff's Motion to Compel Discovery and for Sanctions and LR 37.1 Certification (Docket Entry 36). For the reasons that follow, the Court will grant Plaintiff's instant Motion in part and deny it in part in that the Court will compel Defendant to make further responses to Plaintiff's fifth, sixth, eleventh, and fifteenth Interrogatories and to produce additional documents as to Plaintiff's third, fourth, fifth, seventh, eighth, and tenth Requests for Production of Documents as outlined herein, but will decline to order any further action with respect to Plaintiff's seventh and eighth Interrogatories and Plaintiff's second, fifteenth, twentieth, and twenty-second Requests for Production of Documents and will decline to order any cost-shifting under Federal Rule of Civil Procedure 37(a)(5)(C).

According to her Complaint, Plaintiff, an employee of Lowe's in Burlington, North Carolina, from January 2005 until May 2007, was diagnosed with metastasized breast cancer in October 2006. (See Docket Entry 1, ¶¶ 13, 14, 25.)  Her treatment allegedly caused her to miss work from October 2006 until January 29, 2007. (See id. ¶ 15.)  Upon her return, Plaintiff alleges that she sought several workplace accommodations for her disability.  (See id. ¶ 17.)  With the exception of some initial receptiveness to her requests for consecutive days off to allow for greater recovery, Plaintiff asserts that her supervisor (Karl Hassler), the store manager (Steve Montgomery), and the human resources department (primarily through Cindy Smith) otherwise denied her requests and harassed her about her medical condition.  (Id. ¶¶ 17-24.) Plaintiff claims she could not work in this environment and submitted a resignation letter, with an effective date of May 1, 2007.  (Id. ¶ 25.)

Plaintiff filed a Complaint with this Court alleging claims for (1) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12010-12213 (id. ¶¶ 35-39); (2) constructive discharge in violation of the ADA (id. ¶¶ 49-55); (3) wrongful discharge in violation of the ADA (id. ¶¶ 63-64); and (4) intentional infliction of emotional distress under North

Carolina law (id. ¶¶ 36-48).[1]  Plaintiff seeks back pay for the period from May 1, 2007, to December 31, 2008, as well as damages for emotional and mental distress and reimbursement of medical expenses related to her treatment for emotional and mental distress.  (See Docket Entry 23-1 at 9; Docket Entry 25 at 1-2.)

Plaintiff served her First Set of Interrogatories and Requests for Production of Documents on Defendant on January 20, 2012.  (See Docket Entry 37 at 1.)  Per Plaintiff, on February 28, 2012, she received Defendant's responses to that First Set of Interrogatories and Requests for Production of Documents.  (Id. at 4.)  On March 9, 2012, counsel for Plaintiff "briefly discussed the insufficiency of some of the responses with counsel for [] [Defendant] and ultimately wrote to defense counsel setting forth specific concerns as to the responses on May 17, 2012[.]"  (Id. at 4.)  According to Plaintiff, Defendant's counsel responded by email on May 29, 2012, and responded to certain document requests by hand-delivery later on that same day.  (See id. at 4-5.)

Plaintiff asserts that her counsel reviewed the correspondence and "sent responsive correspondence to [Defendant's counsel] by

---

[1] Plaintiff's claim for wrongful discharge in violation of the ADA actually consists of paragraphs appearing consecutively as 63, 61, 62, 63 and 64.  (See Docket Entry 1 at 14.)  Plaintiff's Complaint thus contains two paragraphs each numbered as 61, 62 and 63.  (See id. at 14-15.)  In addition, Plaintiff's Complaint originally brought state-law claims for violations of the "Handicap Persons Protection Act" (see id. at ¶¶ 56-62) and the "Equal Employment Practices Act" (see id. at ¶¶ 65-68).  The Parties stipulated to the dismissal of those claims, which the Court memorialized in a Consent Order.  (See Docket Entry 12 at 1.)

-3-

email on May 30, 2012, acknowledging those discovery issues that were now resolved, agreeing to limit in scope certain of the requests, pointing out that [] [Defendant] was objecting to producing certain documents when those objections were not made in [] [Defendant's] discovery responses, pointing out that there was no response to the discovery issue raised in [P]laintiff's counsel's initial letter with regard to two of the discovery requests, and providing further explanation as to why the remaining requests were still in issue." (Id. at 5.) Plaintiff states that, despite offering Defendant's counsel the opportunity to call to resolve the remaining issues, Defendant's counsel had not contacted Plaintiff's counsel at the time of the filing of the instant Motion (which ultimately contends that Defendant's responses to six of Plaintiff's Interrogatories and nine of Plaintiff's Requests for Production of Documents are insufficient (see Docket Entry 36 at 1-4)). (Docket Entry 37 at 5.) Defendant responded to the instant Motion (Docket Entry 39) and Plaintiff replied (Docket Entry 42).

## DISCUSSION

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. Accordingly, under the Federal Rules of Civil Procedure, "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

-4-

defense . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.; see also Elkins v. Broome, No. 1:02CV305, 2004 WL 3249257, at *2 (M.D.N.C. Jan. 12, 2004) (unpublished) ("[R]elevancy at discovery is a far different matter from relevancy at trial. At discovery, relevancy is more properly considered synonymous with 'germane' as opposed to competency or admissibility."); Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("It is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader.").

However, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(1). Specifically, Rule 26(b)(2)(C), sets out the following limitations:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C); <u>see also</u> <u>Nicholas v. Wyndham Int'l,</u> <u>Inc.</u>, 373 F.3d 537, 543 (4th Cir. 2004) ("Even assuming that this information is relevant (in the broadest sense), the simple fact that requested information is discoverable . . . does not mean that discovery must be had.  On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [such discovery] . . . if it concludes that [a limitation in Rule 26(b)(2)(C) applies]."); Fed. R. Civ. P. 26(c)(1) (stating that "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding . . . discovery [or] . . . inquiry into certain matters, or limiting the scope of . . . discovery to certain matters").

Notwithstanding the foregoing limitations, the United States Court of Appeals for the Fourth Circuit has declared that "[d]iscovery under the Federal Rules of Civil Procedure is <u>broad in</u> <u>scope and freely permitted</u>."  <u>Carefirst of Md., Inc. v. Carefirst</u> <u>Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 402 (4th Cir. 2003) (emphasis added).  Moreover, the commentary to the Rules indicates that "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action."  Fed. R. Civ. P. 26 advisory committee's notes, 2000 Amendment, Subdivision (b)(1).

In applying the foregoing principles, district judges and magistrate judges in the Fourth Circuit (including members of this Court) have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion. See Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243-44 (M.D.N.C. 2010) (citing Wagner v. St. Paul Fire & Marine Ins. Co., 238 F.R.D. 418, 424-25 (N.D.W. Va. 2006), United Oil Co., Inc. v. Parts Assocs., Inc., 227 F.R.D. 404, 411 (D. Md. 2005), Elkins, 2004 WL 3249257, at *2 (Dixon, M.J.), Spell v. McDaniel, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984), Flora, 81 F.R.D. at 578 (Gordon, C.J.), Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D.W. Va. 1970), and Pressley v. Boehlke, 33 F.R.D. 316, 318 (W.D.N.C. 1963)).

### Interrogatory Nos. 5 & 6

5. Identify any and all employees of Lowe['s] Home Center at the Burlington, North Carolina, location, for whom accommodations were made during the calendar years 2005, 2006, 2007, 2008 and 2009 and state the employee's job title/position, the nature of the accommodation, the time period during which the accommodation was made available to the employee, and the management personnel involved in the decision making process concerning such accommodations.

6. Identify each employee of Lowe's Home Centers during the time period of 2005 through 2009 who requested accommodations, but to whom the requested accommodation were [sic] not provided/granted, the reasons for the denial of the accommodation requested and the management personnel involved in the decision making process concerning such denial of accommodations.

(Docket Entry 36-1 at 4.)[2]

Defendant responded similarly to both of the foregoing Interrogatories - i.e., with respect to Interrogatory No. 5, Defendant stated that it made "a reasonable and diligent search of its records and does not have any record of Accommodation Request Forms being submitted during that time period or any information responsive to this interrogatory" (id.), and with respect to Interrogatory No. 6, Defendant stated that it "made a reasonable and diligent search of its records and has not found any records or information responsive to the Interrogatory" (id. at 5). Plaintiff argues that Defendant failed to adequately respond to Interrogatory No. 5 because said Interrogatory did not simply ask "whether or not an employee filled out an 'Accommodation Request Form'" (Docket Entry 37 at 6) and to Interrogatory No. 6 because "searching business records is not sufficient to respond to the Interrogatory asked" (id.). Moreover, Plaintiff observes that, "[i]f there were no employees who received any accommodations during that time period, then [Defendant] can simply state so." (Id.)

Despite Defendant's initial interrogatory responses that seem to indicate that its efforts to find answers to Plaintiff's instant Interrogatories consisted only of reviewing relevant business records, Defendant's Response opposing the instant Motion states that Defendant "has responded in the only way it is able under the

---

[2] Page citations refer to pagination in the CM/ECF footer.

circumstances: based on a review of its records <u>and the testimony</u> <u>of the managers present at the relevant period in Plaintiff's</u> <u>employment</u>." (Docket Entry 39 at 4 (emphasis added).) Regardless, Plaintiff maintains that Defendant's responses to the instant Interrogatories remain deficient because Defendants "clearly did not ask the Area Human Resources Manager . . ., who was responsible for reviewing all requests for accommodations, [and who] clearly would have had such knowledge and [who] is still employed with [Defendant]." (Docket Entry 42 at 3 (internal quotation marks and citation omitted).)

The Federal Rules of Civil Procedure "require[] that the attorney make a <u>reasonable inquiry</u> into the factual basis of his [discovery] response . . . ." Fed. Rule Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g) (emphasis added). Moreover, by signing the certification mandated by Federal Rule of Civil Procedure 26(g), an attorney "certifies that [he or she] has made a <u>reasonable effort</u> to assure that the client has provided <u>all</u> the information and documents available to [the client] that are <u>responsive to the discovery demand</u>." <u>Id.</u> (emphasis added). Consistent with the foregoing authority, "[a] company has a [] duty to <u>conduct a reasonable investigation</u>, <u>make</u> <u>reasonable inquiries of its employees</u>, and fully respond to the interrogatories posed to the company." <u>3M Innovative Props. Co. v.</u> <u>Tomar Elecs.</u>, Civil No. 05-756 (MJD/AJB), 2006 WL 2670038, at *10

(D. Minn. Sept. 18, 2006) (emphasis added) (unpublished); <u>accord</u> <u>Gonzales v. City of Albuquerque</u>, No. CIV 09-0520 JB/RLP, 2010 WL 553308, at *8 (D.N.M. Feb. 9, 2010) (unpublished) ("The Defendants must make a reasonable effort to answer these interrogatories, including talking to employees and looking at documents."); <u>Hickman</u> <u>v. Wal-Mart Stores, Inc.</u>, 152 F.R.D. 216, 223 (M.D. Fl. 1993) ("[The defendant] has a duty to make a reasonable search of its business records and make a reasonable inquiry of its employees and agents in order to obtain the information asked in Plaintiff's interrogatories.").

Despite Defendant's assertion that, "to the best of its knowledge, there is no responsive information" (Docket Entry 39 at 5), the record does not make clear whether Defendant satisfied its obligations under Federal Rule of Civil Procedure 26. Defendant first indicated only that a search of business records did not reveal a particular type of record (as to Interrogatory No. 5) or responsive records or information (as to Interrogatory No. 6). Defendant then represented that its inquiry included "<u>the testimony</u> of the managers present at the relevant period in Plaintiff's employment" (Docket Entry 39 at 4 (emphasis added)). Because Defendant's representations fail to show that it made proper inquiry of persons likely to have knowledge relevant to the issue, the Court will order Defendant to amend its responses to Interrogatory Nos. 5 and 6.

-10-

## Interrogatory Nos. 7 & 8

  7. State the full name and last known address, giving the street, street number, city and state, of every witness known to you or to your attorneys who has any knowledge regarding the facts and circumstances surrounding the happenings of the incident referred to in the Complaint and with regard to each such witness, please provide a detailed summary of the substance of the knowledge of each such individual.

  8. State the full name and last known address, giving the street, the street number, city and state of every witness known to you or to your attorneys who claims to have seen or heard the Plaintiff make any statement or statements pertaining to any events or happenings alleged in the Complaint on your answer and provide the date of such statements and the contents thereof.

(Docket Entry 36-1 at 5.)

  Defendant responded to Interrogatory Nos. 7 and 8 by stating that it had already produced information regarding witnesses known to have relevant information by way of its initial disclosures. (Id.) Plaintiff contended that Defendant's response does not suffice because it "does not indicate whether or not the individuals identified in the Initial Disclosures is [sic] 'every' witness known to [Defendant] or just some of the witnesses." (Docket Entry 37 at 7 (quoting Docket Entry 36-1 at 5).) Through its briefing, Defendant has clarified that it "is not aware of witnesses other than those so identified." (Docket Entry 39 at 5.) Given Defendant's representation, the Court deems the Motion to Compel moot with respect to Interrogatory Nos. 7 and 8.

-11-

## Interrogatory No. 11

> 11. Please state whether you or your owners, affiliates and/or parent company have ever been involved in any other litigation the nature of which was alleged violations of the ADA during the time period of 2004 to the present. If so, please state the name of the Plaintiff(s), the name of the Defendant(s), the county in which the action was pending and the Court file number.

(Docket Entry 36-1 at 6.)

Because during the relevant time period "Montgomery was employed as a manager at the Winston/West, North Winston, Kernersville, and Burlington Stores; [] Smith was employed as a manager in the Mebane and Burlington Stores and [] Hassler was employed as a manager in the Mebane, Burlington, Southeast Greensboro and North Greensboro Stores[,] . . . [Plaintiff] has agreed to limit this request to those stores for the time period requested." (Docket Entry 37 at 8.) Defendant argues that, even so limited, Interrogatory No. 11 is not reasonably calculated to lead to the discovery of admissible evidence. (See Docket Entry 39 at 7-8.) Specifically, Defendant contends Plaintiff's rationale (as expressed in prior email correspondence between the Parties) - that the existence of prior litigation would make Hassler, Smith, and Montgomery more aware of "'the applicability of the ADA as to [Plaintiff's] disability'" (id. at 7 (quoting Docket Entry 36-2 at 15-16)) - "demonstrates that the Interrogatory is nothing more than an impermissible fishing expedition, as the evidence clearly demonstrates that these store-level employees were not responsible

-12-

for making ultimate determinations regarding the applicability of the ADA" (id. at 8).

Plaintiff, however, has countered that "[t]he information requested . . . is relevant to [the managers'] knowledge of what they were required to do under the ADA as managers for [] [D]efendant with regard to [P]laintiff's expressed concerns about their actions and their effects on her disability." (Docket Entry 42 at 4-5.)  Plaintiff has also noted that, because "the 3 individuals to which the request is limited were either directly involved or ultimately responsible as managers for accommodating that request, their knowledge regarding the applicability of the ADA to [P]laintiff is highly relevant."  (Id. at 5.)

Neither party has cited any authority in support of its respective position.  (See Docket Entries 37, 39, 42.)  "Evidence of other lawsuits is typically only relevant if those lawsuits involve similar claims and can be used to establish a pattern or habit or routine practice."  F & A APLC v. Core Funding Grp., L.P., Civil Action No. 07-543-D-M2, 2009 WL 2214184, at *2 (M.D. La. July 23, 2009) (unpublished).  Accordingly, although a "request for information about all discrimination actions filed against an employer sweeps too broadly," Dooley v. Recreation & Parks Comm'n for the Parish of E. Baton Rouge, Civil Action No. 08-715-A-M2, 2009 WL 1939022, at *4 (M.D. La. July 6, 2009) (unpublished) (internal quotation marks and citation omitted) (emphasis added),

-13-

<u>aff'd</u>, 433 F. App'x 321, 326 (5th Cir. 2011), litigants generally may obtain discovery of prior discrimination claims via requests limited to "the relevant time period, to the particular type of discrimination alleged in the complaint, and to the divisions or departments where the plaintiff and his/her supervisors worked," <u>id.</u>

In light of the foregoing authority and Plaintiff's narrowing of the scope of her Interrogatory, the Court will order Defendant to respond to Interrogatory No. 11 as narrowed.

### Interrogatory No. 15

15. Identify the employees responsible for receiving plant shipments from January 2007 to December 2007 and provide their job title and other job duties.

(Docket Entry 36-1 at 7-8.)

In response to Interrogatory 15, Defendant stated: "Any Customer Service Associate (CSA) assigned to the Outside Lawn & Garden department is or can be responsible for receiving plants. The job description for CSA and the Performance Guide: CSA Sales Floor is attached . . . ." (<u>Id.</u>) Plaintiff contends that Defendant "has not said whether or not other employees that were assigned to the nursery also were responsible for receiving plants (apparently some are as Defendant required [] Plaintiff as a [Live Nursery Specialist] to do so) nor has [D]efendant identified those 'responsible' for receiving the plants." (Docket Entry 42 at 4.)

-14-

The Court agrees that Defendant has not made clear whether other employees, besides CSAs assigned to the Outside Lawn and Garden department, had responsibility for receiving plants. Defendant's brief opposing the instant Motion does not clarify the matter, but instead merely provides: "Although Plaintiff did not ask in the Interrogatory, Plaintiff now asks Defendant whether these were the only individuals responsible for receiving plaints. Defendant's response makes clear that any CSA could receive plants, which is fully responsive to Interrogatory No. 15." (Docket Entry 39 at 6 (emphasis in original).)  "[D]iscovery request[s] should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request . . . ."  Fed. R. Civ. P. 37 advisory committee's notes, 1993 Amendments, Subdivision (a). Fairly read, Interrogatory No. 15 requested identification of all individuals responsible for receiving plants.  Defendant's responses first to said Interrogatory and then to the instant Motion do not make clear whether persons other than CSAs had responsibility for receiving plants.  Accordingly, the Court will order Defendant to provide a more complete response to Interrogatory No. 15.

### Request for Production of Documents No. 2

2.   All correspondence or writings, including electronic mail, evidencing communications between Defendant or any employee thereof and the Plaintiff or her spouse.

-15-

(Docket Entry 36-1 at 8.)

Defendant responded: "[A]ll known <u>relevant</u> documents were produced as part of Defendant's Rule 26(a)(1) Initial Disclosures." (<u>Id.</u> (emphasis added).) Plaintiff, however, contends that "[i]f there were documents that were withheld that [Defendant] does not consider 'relevant' [P]laintiff is entitled to identification of those documents in order that a determination can be made by [P]laintiff's counsel as to whether or not they are relevant to the claims and defenses asserted." (Docket Entry 37 at 9.) Defendant addressed Plaintiff's concerns in its Response to the instant Motion, which provided that Defendant "has fully responded to this request by clarifying that it has not withheld any documents responsive to the Request." (Docket Entry 39 at 6.) Plaintiff did not address Request No. 2 in her Reply (<u>see</u> Docket Entry 42) and has asserted in other communications with Defendant that Request No. 2 has been satisfied (<u>see</u> Docket Entry 36-2 at 18). Accordingly, the Court deems Plaintiff's Motion to Compel moot with respect to Request No. 2.

### Requests for Production of Documents Nos. 3, 4, and 5

3.    Produce a copy of the Human Resources Management (Guides) Policy Number 101-Equal Employment Opportunity in effect in each of the calendar years 2005, 2006, 2007, 2008 and 2009.

4.    Produce a copy of the Human Resources Management (Guides) Policy Number 103-No Harassment in effect in each of the calendar years 2005, 2006, 2007, 2008 and 2009.

-16-

> 5. Produce a copy of the Human Resources Management (Guides) Policy Number 303-Family and Medical Leave Act (FMLA) and State Law Leaves of Absence in effect in each of the calendar years 2005, 2006, 2007, 2008 and 2009.

(Docket Entry 36-1 at 8-9.)[3]

In its Response to the instant Motion, Defendant states that it:

> has produced all of the requested policies _in effect at the time of events relevant to this lawsuit_ . . . . Defendant produced Policy 101 (Request No. 3), which was effective as of July 1, 2006, Policy 103 (Request No. 4), which was effective as of July 1, 2006; and Policy 303 (Request No. 5) which was effective January 1, 2006. Thus, the policies in effect in 2005 were no longer applicable in January 2007, when Plaintiff returned to work following her leave and when she alleges all relevant events occurred. [The Requests] are therefore not reasonably calculated to lead to the discovery of admissible evidence, as they have no tendency to make any fact regarding Plaintiff any more probable than without the evidence.

(Docket Entry 39 at 10 (emphasis added).)

With respect to those Policies in effect in 2005 and early 2006, Plaintiff notes that Defendant did not originally object to their production and then contends: "Simply put - objections not made at the time of providing the responses are waived. There were **no** objections made to providing the policies for the prior years and, [D]efendant specifically did not object to the prior year

---

[3] Plaintiff's instant Motion did not identify Request No. 5 as at issue. (See Docket Entry 36 at 3.) Nor did she list it in the summary/introduction section of her supporting brief. (See Docket Entry 37 at 3.) However, Plaintiff's supporting brief did subsequently address Request No. 5 (see id. at 10) and Defendant's Response did likewise (see Docket Entry 39 at 10). Accordingly, the Court includes Request No. 5 in this Order.

-17-

policies as not being reasonably calculated to lead to the discovery of admissible evidence therefore, they should be produced." (Docket Entry 42 at 5 (emphasis in original); see also Docket Entry 36-1 at 7-8.) With respect to those Policies in effect after Plaintiff's resignation, Plaintiff has addressed only Policy No. 303 in her brief, stating: "It is [P]laintiff's position that the options for returning to work provided to employees who are out of work for non-work related illness is ambiguous. Therefore, subsequent versions of [P]olicy [N]o. 303 are relevant to determine whether or not the ambiguous language was revised, and therefore, we would request Policy [No.] 303 for the years 2008 and 2009 be provided." (Docket Entry 37 at 10.)

"It is well settled that the failure to make a timely objection in response to a Rule 34 request results in waiver." Phillips v. Dallas Carriers Corp., 133 F.R.D. 475, 477 (M.D.N.C. 1990) (Sharp, M.J.). The Court finds no good cause to excuse Defendant's failure to timely object with respect to the policies in effect in 2005 and early 2006 as to all three of the foregoing Requests. Accordingly, the Court will compel said production. With respect to the policies in effect in 2008 and 2009, Plaintiff has articulated a basis for acquiring said information as it relates to Policy No. 303. The Court will order Defendant to provide Plaintiff with the Human Resources Management (Guides) Policy Number 303-Family and Medical Leave Act (FMLA) for 2008 and

2009. However, because Plaintiff appears to have abandoned her Requests as to the remaining policies in effect in 2008 and 2009 (Request Nos. 3 and 4), the Court deems Plaintiff's Motion to Compel moot as it relates to that portion of those Requests.

### Request for Production of Documents No. 7

> 7. Produce the job descriptions for each of the job title/positions identified in response to Interrogatory No. 5.

(Docket Entry 36-1 at 10.)

Plaintiff contends that, "[s]ince Interrogatory No. 5 should be answered, those job descriptions should be provided for the employees identified." (Docket Entry 37 at 10.) Because the Court will order Defendant to supplement and/or clarify its response as to Interrogatory No. 5, the Court also will order Defendant to make additional production as to Request No. 7 to the extent Defendant identifies other employees in connection with Interrogatory No. 5.

### Request for Production of Documents No. 8

> 8. The employee files for . . . Karl Hassler, Cindy Smith, . . . [and] Steven Montgomery . . . .

(Docket Entry 36-1 at 8.)[4]

Defendant objects to this Request on the ground that "the files contain personal and confidential information, the contents of the personnel files are not relevant to any issue in this

---

[4] This Request originally identified a number of other employees or former employees of Defendant, but Plaintiff subsequently narrowed the Request to these three individuals. (See Docket Entry 37 at 10.)

-19-

lawsuit, and the request is not reasonably calculated to lead to the discovery of admissible evidence." (Docket Entry 39 at 10-11.) Plaintiff, however, argues:

> With regard to the factual issues which have developed in this case, including that [] Hassler testified in his deposition that he was a less than pleasant manager, documents in his employment file are very relevant, such as any written complaints or concerns related to [] Hassler. [Plaintiff] complained about her treatment by both [] Hassler and [] Montgomery and alleges that neither of those individuals treated her appropriately and despite her complaints to HR that nothing was done all of which makes any documents related to any complaints by any employees and the actions taken by the employer in response to those complaints clearly relevant given the factual issues in this case. If there are complaints in the files for [] Montgomery and [] Hassler and to the extent that any or no action was taken by [Defendant] to address those complaints, that would substantiate and corroborate [Plaintiff's] testimony, position and basis for her actions. However, if [Defendant] has never received any written complaints concerning [] Montgomery and [] Hassler, we would ask that [Defendant] be required to file a supplemental response stating so. Otherwise, there clearly must be some complaints in their personnel files which should be produced. Additionally, since there is a Protective Order in place, any concerns over personal information can be addressed by designating those documents as confidential.

(Docket Entry 37 at 10-11.) Again, the Parties have not cited authority in support of their respective positions. (See Docket Entries 37, 39, 42.)

Generally, "[b]ecause personnel files contain very sensitive private information about non-parties to th[e] litigation, th[e] Court must weigh the significant privacy interests at stake against the need for the information contained in the personnel files."

*Halim v. Baltimore City Bd. of Sch. Comm'rs*, No. WMN-11-2265, 2012
WL 2366338, at *2 (D. Md. June 20, 2012) (unpublished). "However,
where the files sought are those of employees whose action or
inaction has a direct bearing on the Plaintiff's claims or
Defendant's affirmative defenses . . ., personnel files are subject
to discovery." *Eckhardt v. Bank of Am., N.A.*, Civil No. 3:06CV512-
H, 2008 WL 111219, at *7 (W.D.N.C. Jan. 9, 2008) (unpublished); *see
also Moreno Rivera v. DHL Global Forwarding*, 272 F.R.D. 50, 59
(D.P.R. 2011) ("[Supervisor's] personnel file, performance
evaluations and instances of discipline may be relevant in
establishing a pattern of behavior. . . . As such, his personnel
file is relevant and must be turned over."); *Moss v. Blue Cross
Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 698 (D. Kan. 2007)
("[G]enerally an individual's personnel file is relevant and/or
reasonably calculated to lead to the discovery of admissible
evidence, and therefore discoverable, if the individual is alleged
to have engaged in the retaliation or discrimination at issue or to
have played an important role in the decision or incident that
gives rise to the lawsuit." (internal quotation marks and citation
omitted)).

In this case, the Complaint alleges that "Karl Hassler, Steve
Montgomery and Cindy Smith, acting within the scope of their
employment with the Defendant[] and in furtherance of the
Defendant['s] business did knowingly refuse to accommodate []

-21-

Plaintiff's disability, harassed [] Plaintiff and refused to allow [] Plaintiff to attend physician appointments in an [sic] successful effort to force her resignation from [] Defendant['s] employment." (Docket Entry 1, ¶ 33.) The personnel files of those individuals thus qualify as relevant for discovery purposes under the above-cited authority, which the Court finds persuasive. Moreover, a protective order can address any concerns regarding the handling of sensitive information contained within those files.[5] Accordingly, the Court will grant Plaintiff's motion to compel with respect to Request for Production No. 8, as limited by Plaintiff to Hassler, Montgomery, and Smith (see Docket Entry 37 at 10).[6]

### Request for Production of Documents No. 10

> 10. Any and all documents reflecting [P]laintiff's job duties as a Live Nursery Specialist that were in effect in 2005, 2006, 2007, 2008 and 2009.

(Docket Entry 36-1 at 10.)

According to Defendant, it:

> has produced a job description in effect as [sic] the time of Plaintiff's termination, and given that Plaintiff's allegations focus on her duties for the period January 29 - May 1, 2007, and Plaintiff filed for disability benefits with Defendant's insurance carriers

_____

[5] Although Plaintiff references a protective order in place in this action (see Docket Entry 37 at 10-11), the Docket does not reflect the entry of one.

[6] To the extent complaints against Hassler, Montgomery and/or Smith are kept in a separate location than the personnel files for these managers, those complaints would be relevant as well for the reasons stated, and the Court deems Plaintiff's request for "employee files" sufficient to warrant the production any such complaints.

and with the Social Security Administration while that
job description was in effect, job descriptions from
other time periods are neither relevant nor reasonably
calculated to lead to the discovery of admissible
evidence.

(Docket Entry 39 at 12.) Plaintiff argues that, because "it is
[her] position that [she] could continue to do the job through
2009, and to the present[,] that job description to the extent it
was modified after she departed is certainly relevant." (Docket
Entry 37 at 11.) Plaintiff also notes that, because "Defendant did
not object to providing any job duty descriptions for the prior
years[,] . . . [P]laintiff is entitled to all Live Nursery
Specialist job duty description documents from 2005 forward
. . . ." (Id. at 12.)

Because, as Plaintiff observed, Defendant did not object to
the production of a description of the Live Nursery Position for
the years prior to Plaintiff's resignation (see Docket Entry 36-1
at 10), the Court will order that production. Moreover, because
the issue of whether Plaintiff could have performed the functions
required for her former position through December 31, 2008,[7] could
have relevance to damages, the Court will compel Defendant to
provide the job description for a Live Nursery Specialist in effect
through that date.

---

[7] Plaintiff has previously represented to the Court that she
seeks back pay only for the period prior to December 31, 2008.
(See Docket Entry 25 at 1-2; Docket Entry 35 at 2-3.)

## Request for Production of Documents No. 15

15. All documents reflecting any policy, practice or company guideline requiring employees returning to work off of leave to be "full duty without restrictions" unless it is a work-related incident.

(Docket Entry 36-1 at 12.)

Defendant highlights that the foregoing Request contains "no time limitation whatsoever." (Docket Entry 39 at 12.) Furthermore, Defendant asserts that it "provided the policies which had become effective in 2006 and remained in effect through Plaintiff's employment. As Plaintiff's only period of leave occurred in 2006-2007, no other policy could have applied to Plaintiff and policies effective on other dates have no relevance nor are they reasonably calculated to lead to the discovery of admissible evidence." (Id. at 12-13.)

With respect to policies in effect prior to Plaintiff's resignation, Plaintiff contends that because "no objection was made in the discovery responses as to providing copies of any such policies prior to the 2006 policy . . . any responsive policies in effect prior to 2006 should be produced as that objection is untimely and waived." (Docket Entry 42 at 8.) However, the instant Request did not specify a time period. (See Docket Entry 36-1 at 12.) The Court declines to enforce any waiver under such circumstances. Because Plaintiff has not articulated any other reason for the Court to reject Defendant's persuasive argument

-24-

against further production, the Court will deny Plaintiff's Motion to Compel as it relates to said Request.[8]

### Request for Production of Documents No. 20

> 20. Produce the Work Schedule for Store 508 reflecting the work schedule for the date range from March 10, 2007, to March 16, 2007, week ending March 16, 2007.

(Docket Entry 36-1 at 13.)

Defendant responded to Request No. 20 by stating, "[t]o the extent they exist, Defendant has already produced the requested documents . . . as part of Defendant's Rule 26(a)(1) Initial Disclosures." (Id.) Plaintiff, however, contends that Defendant did not produce certain documents that "must have existed at or near the time of the requested weeks." (Docket Entry 37 at 12.) According to Plaintiff, "[i]f the missing documents have been lost or destroyed [P]laintiff is entitled to an explanation of when they were lost or destroyed and the circumstances surrounding such due to the potential for spoliation of evidence." (Id.)

In response to Plaintiff's instant Motion, Defendant asserts that, "as Defendant is unable to confirm the location of the document, it is also unable to confirm its potential disposition. Plaintiff's position assumes that it was either lost or destroyed, and Defendant is unwilling to speculate regarding the location of any document or whether a document which it is not able to locate

---

[8] Any other issues regarding the documents produced in response to this Request appear mooted by Defendant's Response to the instant Motion. (See Docket Entry 42 at 8.)

existed." (Docket Entry 39 at 6.) Under these circumstances, the Court will deny any relief as to this Request. See, e.g., M.S. ex rel. M.E.S. v. Woodland Hills Sch. Dist., No. 10-700, 2011 WL 294518, at *2 (W.D. Pa. Jan. 27, 2011) (unpublished) ("I cannot compel Defendant to produce information that it does not have, and must accept its representation."); Susko v. City of Weirton, No. 5:09CV1, 2011 WL 98557, at *4 (N.D.W. Va. Jan. 13, 2011) (unpublished) ("[M]ere speculation that documents exist is not a sound basis for a motion to compel.") (citing Kinetic Concepts, 268 F.R.D. at 251-52); In re Lorazepam & Clorazepate Antitrust Litig., 219 F.R.D. 12, 17 (D.D.C. 2003) ("The federal courts are often confronted with a party's complaint that its opponent must have documents that it claims not to have. Such suspicion is, however, insufficient to warrant granting a motion to compel.").

### Request for Production of Documents No. 22

22. Produce the Absent/Tardy lists for all weeks from December 1, 2006, through May 1, 2007.

(Docket Entry 36-1 at 14.)

Defendant responded to the foregoing Request by providing an Absent/Tardy list for Plaintiff for the applicable time period but objecting "to producing any additional Absence/Tardy lists on the grounds that the request is overbroad, unduly burdensome and oppressive, is not relevant to any issues in this case, and is not reasonably calculated to lead to the discovery of admissible evidence." (Id.) Defendant observes that the instant Request does

-26-

not specify any particular employees of Defendant (see Docket Entry 39 at 13); that "[c]ontrary to [the] assertion in [Plaintiff's] brief, the dates and time of work of [Hassler, Montgomery, and Smith] are not at issue" (id.); and that "[t]here is no issue in the case about any employee being tardy or absent and it is therefore unclear how such schedules, particularly for employees Plaintiff does not claim mistreated her, are reasonably calculated to lead to the discovery of admissible evidence" (id. at 13-14).

Plaintiff contends that Defendant's foregoing arguments miss two factual issues to which the Absent/Tardy lists are relevant. First, Plaintiff contends that "the amount of time that passed between when [] [P]laintiff made her complaints in April 2007, and the timing of her resignation is one being argued by [] [D]efendant now in its summary judgment motion and most certainly will be argued by [D]efendant at trial." (Docket Entry 42 at 9.) Plaintiff, however, has not made clear how Absent/Tardy lists for employees other than Plaintiff would shed any light on issues related to that subject.

Second, Plaintiff asserts, without citation to any record materials, that Defendant "raised issues in deposition testimony and in the questioning of [P]laintiff in her two deposition sessions that suggest that there were plenty of other workers in the Outdoor Lawn and Garden area to help [Plaintiff] during the same shifts she was working . . . ." (Id.) It thus appears that

-27-

Plaintiff theorizes from unspecified deposition questions that Defendant might try to defend its failure to accommodate Plaintiff's request for assistance by arguing that they employed a sufficient number of workers to allow her to obtain assistance on an "as needed" basis. Further, it appears Plaintiff contends that Absent/Tardy lists regarding all other employees might somehow help her rebut that anticipated argument. Even understood in that light, the Court concludes that the requested documents have limited, if any, demonstrated relevance, that the request sweeps too broadly, and that production of the requested materials would unduly burden Defendant (particularly from a proportionality perspective, <u>see, e.g.</u>, <u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, 269 F.R.D. 497, 523 (D. Md. 2010) ("[A]ll permissible discovery must be measured against the yardstick of proportionality.")).

Under these circumstances, the Court will deny Plaintiff's Motion to Compel as it relates to Request No. 22.

### Cost-Shifting under Rule 37

Plaintiff's instant Motion also asks for "her reasonable costs and attorneys' fees necessitated by filing of this [M]otion, supporting brief and subsequent filings related to this [M]otion pursuant to [Federal] Rule [of Civil Procedure] 37(a)." (Docket Entry 36 at 6.) Under said Rule, if a motion to compel "<u>is granted</u>--or if the disclosure or requested discovery is provided

-28-

after the motion was filed--the court must, after giving an
appropriate opportunity to be heard, require the party . . . whose
conduct necessitated the motion, . . . to pay the movant's
reasonable expenses incurred in making the motion, including
attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).
The Court's obligation to award expenses under the foregoing
provision takes hold unless:

> (i) the movant filed the motion before attempting in good
> faith to obtain the disclosure or discovery without court
> action;

> (ii) the opposing party's nondisclosure, response, or
> objection was substantially justified; or

> (iii) other circumstances make an award of expenses
> unjust.

Id. However, "[i]f the motion is granted in part and denied in
part, the court . . . may, after giving an opportunity to be heard,
apportion the reasonable expenses for the motion." Fed. R. Civ. P.
37 (a)(5)(C) (emphasis added). Further, the same factors that
limit application of Rule 37(a)(5)(A) also constrain cost-shifting
under Rule 37(a)(5)(C). Switch Comm'cns Grp. LLC v. Ballard, No.
2:11-CV-285 JCM (GWF), 2011 WL 5041231, at *1 (D. Nev. Oct. 24,
2011) (unpublished).

As set forth above, the Court will grant Plaintiff's instant
Motion in part and will deny it in part. Moreover, the preceding
discussion reflects that, although the Court will deny relief as to
some matters only because Defendant supplied clarifications after

Plaintiff filed the instant Motion, the Court also will deny relief as to other matters because Plaintiff's position lacks merit. In addition, in connection with several aspects of Plaintiff's instant Motion, the Court will order only part of the relief Plaintiff requested. Under these circumstances, the discretionary Rule 37(a)(5)(C), rather than the generally mandatory Rule 37(a)(5)(A), applies. Further, because Plaintiff failed to obtain relief on a number of matters raised in the instant Motion, the Court deems cost-shifting unwarranted and therefore exercises its discretion under Rule 37(a)(5)(C) to order the Parties to bear their own costs.

CONCLUSION

Defendant must make further responses to Plaintiff's fifth, sixth, eleventh, and fifteenth Interrogatories and must produce additional documents as to Plaintiff's third, fourth, fifth, seventh, eighth, and tenth Requests for Production of Documents, as outlined herein. The Court, however, will deny relief with respect to the remainder of Plaintiff's instant Motion. Finally, given that the Court resolved a number of discovery disputes in favor of each Party, the Court will not order any cost-shifting.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery and for Sanctions and LR 37.1 Certification (Docket Entry 36) is **GRANTED IN PART** and **DENIED IN PART** in that, by November 9, 2012, Defendant shall make further responses to Plaintiff's fifth,

sixth, eleventh, and fifteenth Interrogatories and shall produce additional documents as to Plaintiff's third, fourth, fifth, seventh, eighth, and tenth Requests for Production of Documents, as outlined herein.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 26, 2012